# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 16-1248V
(not to be published)

* * * * * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| REGINALD GROSE, * | |
| * | Special Master Corcoran |
| * | |
| Petitioner, * | Filed: November 5, 2018 |
| * | |
| v. * | Decision; Attorney's Fees and Costs; |
| * | Reasonable Basis. |
| SECRETARY OF HEALTH * | |
| AND HUMAN SERVICES, * | |
| * | |
| Respondent. * | |
| * | |

* * * * * * * * * * * * * * * * * * * * * * * *

*Amy A. Senerth,* Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Claudia B. Gangi*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## FINAL ATTORNEY'S FEES AND COSTS DECISION[1]

On September 30, 2016, Reginald Grose filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] The Petition alleges that the influenza ("flu") vaccine Mr. Grose received on October 7, 2013, caused him to suffer right shoulder tendinitis, bursitis, and brachial neuritis. *See* Petition ("Pet.") (ECF No. 1) at 1. On January 19, 2017, Petitioner filed an Amended Petition alleging that he received a flu vaccine on a different date—October 7, 2014,—that caused him to suffer right shoulder tendinitis, bursitis, and brachial neuritis, or alternately aggravated pre-existing right shoulder injuries. Amended

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act").

Petition (ECF No. 14) at 1-2. The Amended Petition dropped all allegations relating to the flu vaccine received in 2013 (as it was administered in Petitioner's *left* shoulder with no complications).

Following the filing of medical records and the Rule 4(c) Report in the case, Petitioner filed a motion for a ruling on the record on March 23, 2018 (ECF No. 39). Thereafter, I issued a decision dismissing the case on May 11, 2018 (ECF No. 41).

Petitioner has now filed a motion requesting final attorney's fees and costs, dated September 14, 2018. *See generally* Application for Attorney's Fees and Costs ("Fees App.") (ECF No. 44). Petitioner requests reimbursement of attorney's fees and costs in the total amount of $21,898.44 (representing $21,127.60 for attorney fees, and $770.84 for costs). *Id.* at 2. Respondent filed a response on October 1, 2018, deferring to my discretion the determination of the amount to be awarded. *See* Response, dated Oct. 1, 2018 (ECF No. 45). Petitioner did not file a reply.

For the reasons stated below, I hereby **GRANT IN PART** Petitioner's Motion, awarding attorney's fees and costs in the total amount of **$14,295.84** (representing $13,525.00 in attorney fees, and $770.84 in costs).

## Procedural History and Fees Request

According to the billing record submitted with the fees request, Petitioner's counsel began reviewing the case file in January 2016 (over seven months prior to filing the claim), and immediately worked to obtain Petitioner's medical records thereafter. *See, e.g.*, Ex. A to Fees App. at 5 (January 1, 2016 entry noting "meet with paralegal re vaccination date, record requests"), 5 (February 22, 2016 entry noting office prepared and faxed requests for records). Counsel conducted various tasks related to case preparation throughout the remainder of 2016 (including participating in email communication with Petitioner, discussing missing materials and records, and monitoring file updates). *Id.* at 5.

Although somewhat vague, the same record reveals that counsel began reviewing medical records in September 2016. *See* Ex. A to Fees App. at 5 (September 20, 2016 entry noting counsel "performed comprehensive file review to evaluate claim"), 5 (September 30, 2016 entry noting counsel "reviewed medical records and client file in preparation of filing petition"). Based upon my review, it appears that counsel (and her firm's associates) completed around ten hours of work pertaining to record review during September 2016 (prior to filing the claim). *See id.* at 5. Following the filing of medical records, counsel filed the Joint Statement of Completion on October 25, 2016 (ECF No. 11), without filing any additional medical records.

2

Counsel's billing records suggest that additional medical records (including proof of vaccination) were then requested and received from December 2016 through March 2017. On January 19, 2017, Petitioner amended his Petition to correct the date he received the vaccination at issue (to October 7, 2014), as well as add a claim of significant aggravation of pre-existing right shoulder injuries (as he no longer relied on the 2013 vaccination date to support a direct causation claim with regard to portions of his claim). Am. Pet. at 1-2; *see also* Ex. A to Fees App. at 6 (December 20, 2016 entry noting office prepared and faxed requests), 7 (January 11, 2017 entry noting records were received), 7 (February 1, 2017 entry noting the same), 7 (March 1, 2017 entry noting additional records were requested). Following these requests, counsel filed two additional sets of records on February 21, 2017, and March 22, 2017, respectively. *See* ECF Nos. 15, 20-21. No additional records were filed following those dates.

Counsel thereafter filed an amended Joint Statement of Completion on March 23, 2017 (ECF No. 22). Respondent filed the Rule 4(c) Report on August 7, 2017 (ECF No. 31), contesting Petitioner's right to an award of compensation. Counsel next worked to obtain an expert opinion in support of Petitioner's claim, and completed tasks relating to the same. *See* Ex. A to Fees App. at 9 (September 5, 2017 entry noting counsel contact Dr. Mark Bodor), 10 (October 1, 2017 and December 1, 2017 entries noting counsel spoke with Dr. Bodor regarding review of the case). Additional entries also reveal counsel's work on the matter following Petitioner's dismissal request and my issuance of a Decision thereafter. *See id.* at 10.

Petitioner's fees request asks that his counsel, Ms. Senerth, be compensated at a rate of $225 per hour for work performed in 2017, with an increase to $233 per hour for work completed in 2018. Ex. A to Fees App. at 9-10. Additionally, Petitioner requests compensation at a rate of $275 per hour for work performed by Mr. Paul Brazil in 2016, with increases to $300 per hour in 2017, and $317 for work completed in 2018. *Id.* at 1-10. Petitioner also requests that counsel's associate, Mr. Clark Hodges, be compensated at a rate of $225 per hour for work performed in 2016-2017. *Id.* For paralegal time expended on the matter, Petitioner requests a rate of $125 per hour for work completed in 2016-2017, with an increase to $150 per hour for work in 2018. *Id.* Pursuant to the General Order No. 9 statement, Petitioner maintains that she has incurred no personal costs related to this matter. Fees App. at 2. The fees application also requests reimbursement for litigation costs incurred (representing medical record requests and the filing fee). *Id.*

Respondent reacted to the fees motion on October 1, 2018, stating that he is satisfied that the statutory requirements for an award of attorney's fees and costs are met in this case, but deferring to my discretion the determination of the amount (if any) to be awarded. *See* Response, dated Oct. 1, 2018 (ECF No. 45). Petitioner did not file a Reply. The matter is thus ripe for disposition.

**Brief Summary of Relevant Medical Facts**

At the outset, Mr. Grose based his claim on receipt of the flu vaccine administered on October 7, 2013. *See* Pet. at 1. He later amended his Petition to include a significant aggravation claim (of pre-existing right shoulder injuries) as well as clarify that his claims were related to the flu vaccine he received on October 7, 2014. *See* Am. Pet. at 1-2 (ECF No. 14) at 1-2; Ex. 3 at 1. Petitioner made this change because (as it appears from review of the record) his flu vaccine in 2013 was administered in his *left* shoulder without complication (and he perhaps confused his dates in his first version of the Petition).

Prior to receiving his flu vaccine on October 7, 2014, Petitioner carried multiple pre-existing diagnoses related to ongoing back pain. *See, e.g.*, Ex. 2 at 39 (July 15, 2013 PCP visit noting complaints of muscle cramps, joint pain, back pain for 18-20 years, and muscle aches). For example, during a PCP visit in 2013, he reported that he injured his shoulder "years ago in a car accident" and that the pain began two to "three-and-a-half months ago" while doing pushups at home. Ex. 8 at 6, 8. On exam, Petitioner's primary care physician ("PCP") noted that he had signs of impingement syndrome and an MRI of his right shoulder revealed imaging consistent with rotator cuff tendinitis, subacromial bursitis, and mild arthritis. *Id.* at 6, 12; *see also* Ex. 6 at 6-8 (December 30, 2013 physical therapy record noting treatment for shoulder pain). Additional PCP visits indicated that Petitioner presented with complaints again in April and May 2014. Ex. 2 at 33-36 (April 21, 2014 visit noting concerns for muscle spasms, weakness, and right shoulder pain), 29, 31-32 (May 19, 2014 visit noting complaints of pain/weakness in right shoulder, decreased range of motion, and atrophy, as well as past diagnoses of arthritis and tendonitis). According to Petitioner's affidavit, he fully recovered from his injuries and was pain free by May 2014. *See* Affidavit, filed as Ex. 11 ("Aff.") (ECF No. 15-8) at 1-2.

No adverse reactions were noted at the time of vaccine administration in October 2014. *See* Ex. 3 at 1. The filed medical records suggest that Petitioner next presented for treatment on December 15, 2014 (roughly one and one-half months following vaccine administration). Petitioner reported to the South Jersey Spine Center on that date complaining of constant shoulder pain (including burning, numbness, tingling, cramps, and stiffness) with onset twelve months prior to the visit (i.e. December 2013). Ex. 7 at 4-5, 6. Consultation notes indicated that Petitioner was assessed with shoulder pain and tenderness upon exam. *Id.* at 6-7.[3]

On January 19, 2015 (over three months following vaccination), Petitioner presented to his PCP reporting that his shoulder and neck pain had gotten worse since his last office visit

---

[3] It appears from Petitioner's records that he scheduled multiple follow-ups with the South Jersey Spine Center throughout January to May 2015. *See* Ex. 7 at 13-14. However, the only other consultation notes filed were from a visit on February 18, 2015, which discussed a cervical MRI performed on the day prior. Ex. 7 at 10-11. Findings indicated Petitioner was suffering from a disc bulge and joint hypertrophy. *Id.* at 11.

(presumably in May 2014 based on the filed records), but that his muscle spasms had improved. Ex. 2 at 19. Notes from the visit indicated that Petitioner had decreased range of motion as well as atrophy in his right arm, similar to those symptoms experienced in May 2014 (prior to vaccine administration). *Id.* at 21; *but see* Ex. 2 at 31 (May 19, 2014 physical exam noting "+[d]ecreased strength and ROM with resistance on the right shoulder with flexion 3/5 . . . [p]ain in right shoulder with flexion, external rotation and abduction of right shoulder . . . [v]isible atrophy or right UE . . . ++weakness"). Petitioner returned for a follow-up visit on February 17, 2015, again reporting the "same" right shoulder pain (and also now more severe pain in his left shoulder) along with swelling of the right shoulder. *Id.* at 14, 16. Notes from the physical exam, however, noted the same problems he had been experiencing since May 2014. *Id.* at 16 ("+[d]ecreased strength and ROM with passive and active ROM of the right shoulder especially with flexion; strength 3/5 . . . [p]ain in right shoulder with flexion, external rotation and abduction of right shoulder . . . [v]isible atrophy of right UE . . . ++weakness"). He reported the pain began over the last year (i.e. placing onset around February 2014). *Id.* at 14. Offices notes make no mention of his receipt of the flu vaccine.

On March 19, 2015 (now over five months following his receipt of the flu vaccine), Petitioner presented for a rheumatology consult. Ex. 9 at 65-68. During the visit, Petitioner reported an onset of bilateral right shoulder pain (eventually progressing to the left shoulder as well) approximately two years prior around March 2013 (and thus before vaccination). *Id.* at 65. Office notes also included arthritis, subacromial bursitis, and tendonitis as pre-existing diagnoses. *Id.* Upon exam, Petitioner's treating rheumatologist found decreased range of motion in both shoulders (as well as tenderness and pain). *Id.* at 66. He assessed Petitioner with bursitis and brachial neuritis/radiculitis. *Id.* at 67-68. Again, office notes did not suggest any vaccine involvement (or any aggravation of symptoms since the March 2013 onset). Petitioner presented for two rheumatology follow-up visits on May 7, 2015, and August 13, 2015, respectively. Ex. 4 at 13-16. Notes from Petitioner's follow-up appointments indicate the he continued to experience side effects from the bursitis (including deconditioning and decreased muscle mass). *Id.* at 13, 16.

Between April and June 2015, Petitioner visited a pain specialist for treatment related to his chronic back and shoulder pain. Ex. 2 at 7, 78-80. During these visits Petitioner reported that his shoulder ailments were improving, but that his neck pain persisted. *Id.* at 78. A physical exam was positive for decreased range of motion, right shoulder tenderness, and shoulder abduction/flexion. *Id.* at 79. As to onset, Petitioner specifically denied any particular inciting event or trauma. *Id.* at 78. He indicated that his pain was helped with the use of Naproxen, but exacerbated with increased activity. *Id.* Petitioner similarly followed up with his PCP throughout the months of April and May 2015 for monitoring of his symptoms. Ex. 2 at 10-12 (April 7, 2015 visit indicating current problems include neck pain, right shoulder tendinitis, shoulder pain/weakness, but no new changes), 7-8 (May 19, 2015 follow-up visit for pain management).

On November 3, 2015 (almost a year post-vaccination), Petitioner presented for a

neurology consult related to his progressive, bilateral arm and hand weakness. Ex. 2 at 50, 57; Ex. 12 at 15, 57. During this visit, Petitioner provided a health history of right shoulder pain beginning "[a]bout 2 years ago after a flu shoulder [sic]" (i.e. around November 3, 2013) and that "a year ago" he experienced additional weakness in the left arm. Ex. 12 at 15. He also reported symptoms including arm/neck cramps, tingling, and muscle twitching. *Id.* at 16 Petitioner's treating neurologist assessed him with "progressive, painless weakness of both arms and hands without sensory loss with non-explanatory cervical spine imaging." *Id.* at 17. His overall diagnosis was bilateral arm weakness. *Id.* at 18. Apart from the notation of Petitioner's right shoulder pain beginning after a "flu shoulder [sic]" in 2013, the visit notes do not indicate that Petitioner's neurologist causally connected a vaccination to any subsequent symptom.

Petitioner's medical records (detailing medical visits from June 2015 through September 2015) show he continued to seek various treatments for his shoulder and neck pain. *See, e.g.*, Ex. 2 at 68 (June 17, 2015 physical therapy treatment for brachial neuritis and muscle weakness), 65 (September 21, 2015 noting the same); Ex. 6 at 22-46 (noting various physical therapy visits)[4]; Ex. 13 at 1 (June 2, 2015 visit for epidural steroid injection related to cervical radiculopathy). His records also indicate that he developed additional health problems during 2015 which continued through the following year. *See, e.g.*, Ex. 2 at 72 (May 29, 2015 lymphoma diagnosis); Ex. 9 at 13 (noting the same); Ex. 10 at 5 (February 11, 2016 visit noting chemotherapy treatment for lymphoma/Waldenstrom's macroglobulinemia); Ex. 5 at 6-7 (May 8, 2015 carpel tunnel diagnosis); Ex. 12 at 1-3 (January 9, 2017 record noting a diagnosis of progressive amyotrophic lateral sclerosis or "ALS").

The remainder of Petitioner's filed medical records pertain to visits unrelated to the injury alleged herein. *See, e.g.*, Ex. 2 at 46 (December 17, 2015 hospital presentation for eye laceration), 44 (February 1, 2016 hospital record for head abrasion following a fall).

Apart from the filed medical records, Petitioner also filed an affidavit detailing his recollection of his health course both prior and subsequent to his receipt of the flu vaccine on October 7, 2014. *See* Petitioner's Affidavit, dated Feb. 21, 2017, filed as Ex. 11 (ECF No. 15-8). In it, Petitioner acknowledged that he sustained a shoulder injury (attributable to tendinitis he developed after installing a video surveillance system) prior to receiving the October 2014 vaccination. Ex. 11 at 1-2. He asserted, however, that by May 2014, he had "fully recovered" from the previous injury. *Id.* at 2. Following vaccine administration, Petitioner reported that he presented for various appointments from January to April 2015 (reporting a worsening of right shoulder and

---

[4] During a June 17, 2015, physical therapy visit, Petitioner reported that he developed "increased symptoms 3 months ago" (i.e. around March 2015) relating to his pre-existing diagnoses of bursitis and tendonitis in the shoulders. Ex. 6 at 22. Consultation notes from Petitioner's rheumatology visit in March of that year, however, indicate he reported an onset of shoulder symptoms two years prior to the visit (i.e. in March 2013). *See* Ex. 9 at 65-68.

6

neck pain), which in his view, evidenced *new* shoulder problems. *Id.* Despite the above, Petitioner's affidavit directly contradicts the medical records (as discussed below), which indicate that he consistently reported to treaters an onset of right shoulder pain prior to his receipt of the October 2014 flu vaccine. *See, e.g.*, Ex. 9 at 65; Ex. 12 at 15. Moreover, although he reports a worsening of symptoms following vaccine administration, a closer examination of the filed records show no indication of any aggravation.

## ANALYSIS

### I.     Reasonable Basis Standard

####    A.     *Relevant Legal Standards*

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis"[5] sufficient for a fees award. *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4-5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality of the circumstances," including all facts relevant to the to the case. *See Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)). The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, shed light on the extent of objective evidence supporting a claim (and <u>when</u> that evidence was, or could have been, unearthed). *See Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)). Program attorneys are expected to conduct a reasonable pre-filing investigation—including an evaluation of the factual basis for the claim at minimum. *See Allicock*, 2016 WL 3571906, at *4; *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[a] reasonable pre-filing inquiry involves an investigation of the factual basis for a Program claim *or* the medical support for a vaccine petition") (emphasis added)).

---

[5] Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

The Court of Federal Claims recently provided further illumination as to the standards that should be used to evaluate whether the totality of the circumstances warrant a finding that reasonable basis existed. *Cottingham v. Sec'y of Health & Human Servs.,* No. 15-1291V, 2017 WL 4546579, at *10 (Fed. Cl. Oct. 12, 2017). As Judge Williams therein stated, a special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Id*. at *5. An impending statute of limitations deadline, however, has been removed from consideration under the "totality of the circumstances" analysis. *See Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed, Cir. 2017); *see also Amankwaa v. Sec'y of Health & Human Servs*., No. 17-036V, slip. op. at 9-10 (Fed Cl. June 4, 2018) ("special masters must not consider subjective factors in determining whether a claim has reasonable basis[,]" and should "limit [their] review to the claim alleged in the petition . . . based on the materials submitted.") (quoting *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Spec. Mstr. Jan. 5, 2018)).

B. *Reasonable Basis Existed in this Case until March 23, 2017.*

As noted above, Mr. Grose originally alleged in his Petition that a flu vaccine he received on October 7, 2013, caused him to develop various right shoulder injuries. Pet. at 1. He filed medical records offering some support (albeit weak) for this assertion. *See* Ex. 12 at 15 (indicating an onset of shoulder pain beginning "about 2 years ago after a flu shoulder [sic]"). He later amended his Petition (after obtaining proof of vaccination) to include a claim of significant aggravation of pre-existing right shoulder injuries, as well as correct the date of vaccine administration to October 7, 2014, once he realized he was mistaken about the date he received the vaccine. *See* Am. Pet. at 1-2.

Proof of vaccination is a fundamental threshold issue in Vaccine Program cases. *See* § 11(c)(1). In the context of reasonable basis however, I have found in previous cases that lack of such proof at the outset is not necessarily fatal to a claim. *See, e.g.*, *Livingston v. Sec'y of Health & Human Servs.*, No. 12-268V, 2015 WL 4397705, at *8 (Fed. Cl. Spec. Mstr. June 26, 2015). A petitioner can overcome the lack of direct proof of vaccination having been administered through circumstantial evidence tending to establish that he did in fact receive the vaccine at issue. *See, e.g.*, *Lamberti v. Sec'y of Health & Human Servs.*, No. 99-507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007) (finding medical record references to vaccine receipt constituted adequate evidence of administration). Here, Petitioner's claim possessed at least *some* objective support for reasonable basis prior to its filing based on a statement made by a treating physician relating onset of his symptoms to a 2013 vaccination (Ex. 12 at 15).

Although the records counsel possessed at the time of filing do raise the issue that a

vaccination *could* have played some role in his onset of symptoms, this does not mean that the facts of this case do not also militate against a full award of attorney's fees through September 2018, however, as requested by Petitioner. Well-reasoned decisions have noted that even cases that begin with reasonable basis can lose it over time, once more evidence comes in that reveals a claim's weaknesses. *See, e.g., Pannick v. Sec'y of Health & Human Servs.*, No. 16-0510V, 2016 WL 8376894, at *2 (Fed. Cl. Spec. Mstr. Nov. 8, 2016). I have ruled that reasonable basis ceased to exist for certain claims that initially had it for this very reason. *See, e.g., Curran v. Sec'y of Health & Human Servs.*, No. 15-804V, 2017 WL 1718791 (Fed. Cl. Spec. Mstr. Mar. 24, 2017); *see also Fieselman v. Sec'y of Health & Human Servs.*, No. 17-170V, 2017 WL 5398625 (Fed. Cl. Spec. Mstr. Sept. 14, 2017); *Butler v. Sec'y of Health & Human Servs.*, No. 16-1620V, 2017 WL 3811134 (Fed. Cl. Spec. Mstr. Aug. 3, 2017).

The billing invoices offered in support of the present fees motion demonstrate that counsel filed this claim without the benefit of full record review (based in part on Petitioner's mistaken belief that he received the flu vaccine in his right arm in 2013). The additional records counsel eventually obtained however, not only showed that the 2013 vaccination was administered in the *left* arm, but also revealed facial deficiencies with Petitioner's claim. Notably, none of his treating physicians appear to have attributed the October 2014 vaccination he received as playing any part in his health issues close-in-time to vaccination (or thereafter).

A review of the contemporaneous medical record filed in support reveals *one* sole reference in Petitioner's health history to a relationship between a flu vaccination he received and any subsequent shoulder problems thereafter—but it was to the 2013 vaccination (which he received in his *left* shoulder). *See* Ex. 12 at 15. Otherwise, no treater related any of Petitioner's symptoms to an onset of brachial neuritis or a significant aggravation of his pre-existing right shoulder problems. Overall, the treater opinions set forth herein do not support Petitioner's assertion that he suffered a vaccine-induced injury, and it is otherwise undeniable that he was never so diagnosed around the time of the vaccination – or later for that matter.

Further supporting a finding that reasonable basis ended before the case's conclusion is the fact that Petitioner continued to report to treaters (even after receipt of the flu vaccine) that his shoulder symptoms began long before his October 2014 vaccination. *See* Ex. 9 at 65-68 (March 19, 2015 office visit diagnosing Petitioner with brachial neuritis where Petitioner reported an onset of symptoms two years prior); Ex. 2 at 14 (February 17, 2015 office visit noting a report of right shoulder pain beginning over the last year); Ex. 12 at 15 (November 3, 2015 office visit noting bilateral arm pain and weakness began "about 2 years ago").

Admittedly, one record from January 2015 indicates that Petitioner reported his shoulder pain "ha[d] gotten worse since last OV." Ex. 2 at 21. But upon physical exam, it does not appear

that Petitioner's treater noted any aggravation of symptoms. *See id.* at 21, 31; *see also* Ex. 9 at 65-66; Ex. 12 at 15. Petitioner thus had pre-existing shoulder injuries (as early as March 2013), and continued to report the *same* problems to his treaters thereafter, with no clear aggravation or worsening of symptoms noted on exam. Based on my own review, I find there is insufficient evidence in the filed medical record supporting Petitioner's claim that he experienced any vaccine-induce injury (whether an initiation or an aggravation).

The timeline revealed by the invoices submitted with this fees application bulwarks the conclusion that the claim's lack of reasonable basis could have been determined long before its dismissal. An examination of the record reveals that Petitioner's counsel began examining the case file over seven months prior to filing the claim (with ten hours of record review occurring at least one month prior to filing). Thereafter, counsel obtained supplemental records and completed additional hours of record review following the filing of the Amended Petition. Counsel thus had ample time to learn of the claims made by Petitioner to his treaters placing onset of his symptoms prior to his receipt of the October 2014 vaccination (as well as the lack of any evidence of aggravation). Even a cursory review of the later-obtained records would have reasonably informed counsel the case was going to be very difficult to prosecute successfully. Overall, there is no persuasive evidence in the medical records which indicates that Petitioner's vaccination caused him any harm, or that any treater opined that the symptoms he experienced were attributable to the October 2014 vaccination alleged to have caused his injuries.

Given all of the above, this claim's lack of reasonable basis should have been determined sooner. Once the case was filed, it was incumbent upon counsel to perform and complete additional record review *immediately*, obtaining as quickly as possible any documents necessary for that inquiry. I therefore find that reasonable basis for this claim ended as of March 23, 2017 (the date counsel filed all remaining medical records), by which time it should have been clear to Petitioner (and counsel) that the claim lacked objective support. I will not award any hours of attorney or paralegal work performed following that date (with the exception of costs relevant to preparing the dismissal). *See Curran*, 2017 WL 1718791, at *3-4 (awarding modest fees associated with winding down the case).

## II.     Calculation of Fees Award

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, DC, for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the *Davis* exception). *Avera,* 515 F.3d at 1348 (Fed. Cir. 2008, citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). As the Federal Circuit stated in *Avera*, inclusion of the *Davis* exception ensures against a "windfall" – meaning paying a lawyer in a rural or less expensive locale more than she would otherwise earn, simply because she is litigating a case in a court of national jurisdiction. *Avera,* 515 F.3d at1349.

After the hourly rate is determined, the reasonableness of the total hours expended must be determined. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 205-06 (2009). This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley v. Eckerhart*, 461 U.S. 424, 437(1983).

Petitioner asks that Ms. Senerth, her associates, and one paralegal, be reimbursed at varying rates for work performed from 2016-2018, as detailed above. Ms. Senerth's firm, located in Dresher, Pennsylvania, has repeatedly been found to be "in-forum" and therefore she is entitled to the forum rates established in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).[6] *See, e.g., Winterfeld v. Sec'y of Health & Human Servs.*, No. 15-933V, 2018 WL 2225178 (Fed. Cl. Spec. Mstr. Mar. 9, 2018); *Colagreco v. Sec'y of Health & Human Servs.*, No. 14-465V, 2016 WL 6518579 (Fed. Cl. Spec. Mstr. Sept. 26, 2016). The rates requested herein are the same as those awarded to counsel in my previous decisions, and I will reimburse counsel at the rates requested without reduction.

In light of my reasonable basis determination, however, I will make an adjustment to the time awarded for attorney services. As mentioned above, I will not award any hours of attorney or paralegal work performed after March 23, 2017 (with the exception of costs relevant to winding down the case and preparing it for dismissal). This results in an award of 62.9 hours for attorney work and paralegal work in 2016-2017—representing an elimination of 34.7 hours of attorney work and 1.3 hours of paralegal work (an overall reduction of $8,277.60). I will, however, award counsel three additional hours representing wind-down costs (awarded at Ms. Senerth's 2017 rate and totaling an additional $675). This amounts to a total fees award of $13,525.00. These

---

[6] The *McCulloch* forum rate ranges have been compiled into a list and posted to the Vaccine Claims section of the United States Court of Federal Claim website. The forum hourly rate fee schedule can be accessed at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters ("OSM Hourly Rate Chart").

11

reductions are in keeping with the "rough justice" I am empowered to effect when making fees awards in the Program, in order to account for the unnecessary time devoted to this matter. The amounts reduced are as follows:

| Attorney/Paralegal | Year Work Performed | Hours Reduced | Hourly Rate | Total Reduction |
|---|---|---|---|---|
| Senerth | 2017 | 25.8 | $225 | $5,805.00 |
|  | 2018 | 5.4 | $233 | $1,258.20 |
|  |  |  |  |  |
| Hodges | 2017 | .2 | $225 | $45 |
|  |  |  |  |  |
| Brazil | 2017 | 2.6 | $300 | $780 |
|  | 2018 | .7 | $317 | $221.90 |
|  |  |  |  |  |
| Loecker | 2017 | 1.1 | $125 | $137.50 |
|  | 2017 | .2 | $150 | $30 |
|  |  |  | **Total Fee Reduction:** | **$8,277.60** |

Petitioner's requested costs include reimbursement for the filing fee and requests associated with obtaining medical records (representing $770.84 in total). *See* Fees App. at 2. These costs are reasonable and will be reimbursed in full.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, I award a total of **$14,295.84** (representing $13,525.00 in attorney fees, and $770.84 in costs) as a lump sum in the form of a check jointly payable to Petitioner and his counsel, Amy Senerth, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[7]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' filing of a joint notice not to seek review.